**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CHAUNCEY STEWART, a/k/a CHONICE
STEWART,

                         Plaintiff,

v.

EDWARD CASTINE, individually, DEAN
LACLAIR, individually, MATTHEW
GRAVELLE, individually, KEVIN SANTO,
individually, TODD STRACK, individually, N.
JOHNSON, individually, N. YOUNG,
individually, BENJAMIN DARRAH,
individually, and JOHN and JANE DOE 1
through 10, (the names John and Jane Doe being
fictitious, as the true names are presently
unknown),

                         Defendants.

9:25-cv-486
(ECC/ML)

---

Brett H. Klein, Esq., *for Plaintiff*
Elizabeth V. Lombardi, Assistant United States Attorney, *for Named Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

Plaintiff Chauncey Stewart initiated this civil rights action under 42 U.S.C. § 1983 asserting claims for the violation of his constitution rights arising out of an altercation while he was incarcerated at the Clinton County Correctional Facility and his subsequent criminal prosecution against Defendants Edward Castine, Dean Laclair, Matthew Gravelle, Kevin Santo, Todd Strack, N. Johnson, N. Young, Benjamin Darrah (Named Defendants), and unnamed Defendants. Dkt. Nos. 1, 21. Specifically, he asserts five claims: excessive force, malicious prosecution, fair trial, failure to intervene, and supervisory liability. Am. Compl. ¶¶ 39-63. Presently before the Court is the Named Defendants' motion to dismiss the malicious prosecution,

fair trial, and supervisory liability claims under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 26. The motion is fully briefed. Dkt. Nos. 26-2, 32, 33. For the following reasons, the motion to dismiss Plaintiff's malicious prosecution, fair trial claims, and supervisory liability claims is granted.

## I.    FACTS[1]

At all times, relevant to this dispute, Plaintiff Chauncey Stewart was incarcerated at Clinton Correctional Facility, and the Named Defendants were corrections officers who worked at that facility. Amended Complaint (Am. Compl.) ¶¶ 6, 7, Dkt. No. 21.

On April 19, 2022, Defendants Castine and Gravelle "were escorting plaintiff and a number of other incarcerated individuals to the prison bathhouse," and Castine "bumped into plaintiff, almost causing plaintiff to fall down." Am. Compl. ¶¶ 9-10. Plaintiff asked Castine to apologize, and Castine ordered him to return to his cell. *Id*. at ¶¶ 11-12. While escorting Plaintiff to his cell, Castine and Gravelle "subjected plaintiff to unreasonable and otherwise wanton force in retaliation for plaintiff asking for an apology, and not for any proper penological purpose." *Id*. at ¶ 13. Plaintiff "was not engaged in any behavior warranting the use of force." *Id*. at ¶ 14.

Castine "punched and choked" Plaintiff, and Gravelle "joined in the unlawful conduct by, *inter alia*, needlessly kneeing and punching plaintiff in the ribs." Am. Compl. ¶¶ 15-16. Gravelle and Castine handcuffed Plaintiff. *Id.* at ¶ 17. While Plaintiff was in handcuffs and "still not engaged in any behavior warranting the use of force," Laclair "responded to the incident and also participated . . . by kicking and stepping on plaintiff's legs and kicking plaintiff in the groin area."

---

[1] These facts are drawn from the Amended Complaint. Dkt. No. 21. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Id.* at ¶ 18.  While Plaintiff was still in handcuffs, Castine punched Plaintiff in his head, put his knee on Plaintiff's neck, and "pulled his dreads with such force that plaintiff felt some of his dreads were pulled from his head."  *Id.* at ¶ 19.  Santo was present but did not intervene.  *Id.* at ¶ 20.

Strack, Johnson, and Young escorted Plaintiff to the medical clinic, and while Plaintiff was in the medical clinic, he "was subjected to further acts of excessive force" by Strack, Johnson and Young in the presence of Darrah.  Am. Compl. ¶¶ 21-22.  While Plaintiff was still handcuffed, Strack choked Plaintiff and put a plastic bag over his head, while Johnson and Young punched Plaintiff "in the stomach and ribs."  *Id.* at ¶ 23.  Darrah "was supposed to be recording plaintiff's escort but instead stood by and did nothing to intervene" and only turned on the video camera after Strack, Johnson, and Young used force.  *Id.* at ¶¶ 23-24.

Santo, Castine, and Gravelle forwarded "false evidence"—that Plaintiff punched Castine to start the altercation—to the Clinton County District Attorney's office to initiate a criminal proceeding against Plaintiff.  Am. Compl. ¶¶ 25-27.  After Santo, Castine, and Gravelle testified before a grand jury, the grand jury returned an indictment and Plaintiff was arrested.  *Id.* at ¶¶ 28-29.  In addition to his arraignment, Plaintiff attended five pre-trial criminal court appearances.  *Id.* at ¶ 30.  During the trial, Castine, Gravelle, and Santo testified that Plaintiff punched Castine, and Laclair testified that Plaintiff was "struggling on the ground" with Castine and Gravelle, and he resisted being handcuffed.  *Id.* at ¶¶ 32-33.  The jury acquitted Plaintiff.  *Id.* at ¶ 36.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Although a complaint need not contain

detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## III.    DISCUSSION

Defendants move to dismiss the supervisory liability, malicious prosecution, and fair trial claims. Defendants' Motion to Dismiss (Def. Mot.) at 4, 7, 10, Dkt. No. 26-2.[2]

### A.    Malicious Prosecution

Defendants argue that Plaintiff fails to allege a malicious prosecution claim because Plaintiff—who was incarcerated on separate charges throughout the prosecution—did not suffer a loss of liberty. Def. Mot. at 13. Plaintiff responds that an individual who is taken to court during a criminal prosecution suffers a loss of liberty regardless of any pre-existing incarceration. Plaintiff's Response Memorandum of Law (Pl. Mem.) at 10-11, Dkt. No. 32.

"To state a Section 1983 claim for malicious prosecution, the plaintiff must allege that: '(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice.'" *Jeanty v.*

---

[2] Page numbers refer to the pagination generated by ECF, unless otherwise noted.

*City of New York*, 23-cv-9472, 2024 WL 5236462, at \*23 (E.D.N.Y. Dec. 28, 2024) (quoting *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991)). "Because a malicious prosecution claim brought under § 1983 is grounded in the Fourth Amendment, . . . the plaintiff must also establish another element in addition to the state tort requirements: a post-arraignment deprivation of liberty that rises to the level of a constitutional 'seizure.'" *Coleman v. City of New York*, 688 F. App'x 56, 57-58 (2d Cir. 2017) (citing *Albright v. Oliver*, 510 U.S. 266, 274-75 (1994) and *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995)).

"[A] plaintiff does not allege a deprivation of liberty when he was already incarcerated for an unrelated crime before the contested charges were brought and would have remained incarcerated for that crime regardless of the contested charges." *Poulos v. Cnty. of Warren*, No. 21-2656, 2023 WL 4004692, at \*2 (2d Cir. June 15, 2023) (citing *Singer*, 63 F.3d at 116). "Where a plaintiff is already in custody, and remained in custody, for a completely separate charge, the plaintiff could not have suffered a deprivation of liberty as a result of the charges at issue." *Coffey v. Broome Cnty.,* No. 9:23-cv-236 (AMN), 2025 WL 2391724, at \*10 (N.D.N.Y. Aug. 18, 2025) (cleaned up) (quoting *Walker v. Sankhi*, 494 F. App'x. 140, 143 (2d Cir. 2012)); *see also Cisse v. Annucci*, No. 9:22-cv-0156 (TJM), 2022 WL 1183274, at \*12 (N.D.N.Y. Apr. 21, 2022) ("A plaintiff does not have a claim for . . . malicious prosecution under section 1983 if, at the time of his arrest and prosecution, he already is in custody on other charges, because there is no deprivation of liberty interests.") (quoting *Doe v. Selsky,* 841 F. Supp. 2d 730, 732 (W.D.N.Y. 2012) and citing *Walker v. Sankhi,* 494 F. App'x 140, 142-43 (2d Cir. 2012) ("[Plaintiff's] federal . . . malicious prosecution claims must fail because . . . [plaintiff] could not have suffered a deprivation of liberty as a result of [one] burglary charge because, throughout the pendency of that charge, he was

5

already in custody, and remained in custody, for a completely separate burglary charge, of which he was ultimately convicted.")).

Here, Plaintiff was incarcerated on unrelated charges during the prosecution arising out of the April 19, 2022 altercation.  Am. Compl. ¶ 6.  He therefore did not suffer an actionable deprivation of liberty when he was compelled to attend criminal proceedings because he was already incarcerated on an unrelated crime.  *Polous,* 2023 WL 4004692, at *2; *Coffey,* 2025 WL 2391724, at *10.

Plaintiff relies on several cases to argue that "being forced to appear in court over a period of several months, and subjected to the risks, stress, and potential costs of being bound over for trial . . . support a finding that plaintiff can maintain a valid malicious prosecution claim."  Pl. Mem. at 11 (citing *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013); *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 389 (E.D.N.Y. 2013); *Genia v. New York State Troopers*, No. 03-cv-0870, 2007 WL 869594, at *14 (E.D.N.Y. Mar. 20, 2007)).  But these cases are all distinguishable because the plaintiffs were not already incarcerated for unrelated crimes.  *See Swartz*, 704 F. 3d at 108-09 (involving a traffic stop); *Hoyos*, 999 F. Supp. 2d at 382-84 (same); *Genia*, 2007 WL 869594 at *1-2 (involving a protest).

Plaintiff has not pled a deprivation of liberty for his malicious prosecution, and therefore the motion to dismiss the malicious prosecution claims is granted.[3]

---

[3] Plaintiff suggests that, in the alternative, he may be able to plead a deprivation of liberty because he was placed in the Segregated Housing Unit.  Pl. Mem. at 11-12.  Given that these allegations are not in the Amended Complaint, the Court will not address this argument at this time.  If Plaintiff wants to amend the Amended Complaint, he may file a motion to amend the pleadings pursuant to Fed. R. Civ. P. 15 and N.D.N.Y. Local Rule 15.1.  Nothing in this decision should be interpreted as an indication of how the Court may rule on such a motion.

### B.  Fair Trial

Defendants argue that Plaintiff's fair trial claim fails for the same reason that the malicious prosecution claim fails: Plaintiff did not suffer a deprivation of liberty.  Def. Mot. at 15-16. Plaintiff responds that there was an actionable deprivation of liberty.  Pl. Mem. at 12-13.

"To state a fair trial right claim, a plaintiff must plausibly plead the following elements: '(1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."  *Hutchins v. Solomon*, No. 16-cv-10029 (KMK), 2018 WL 4757970, at *16 (S.D.N.Y. Sept. 29, 2018) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (additional citation omitted)).

Courts use the same analysis for a deprivation of liberty in the context of fair trial claims as they do in malicious prosecution claims.  *See, e.g.*, *Seabrook v. City of New York*, No. 14-cv-3059, 2016 WL 554823, at *4 (E.D.N.Y. Feb. 10, 2016) (explaining that for both fair trial and malicious prosecution claims, "the plaintiff must establish a 'deprivation of liberty consistent with the concept of 'seizure.'") (quoting *Singer,* 63 F.3d at 116) (malicious prosecution) and citing *Lopez v. City of N.Y.,* 105 F. Supp.3d 242, 247 (E.D.N.Y. 2015) (fair trial)).  For the same reasons explained above, Plaintiff has not alleged an actionable deprivation of liberty in connection with the criminal prosecution because he was already incarcerated on unrelated charges.  Defendants' motion to dismiss Plaintiff's fair trial claims is therefore granted.

### C.  Supervisory Liability

Defendants argue that the claims for supervisory liability against Santo and Strack are duplicative of the direct liability claims.  Def. Mot. at 9-12.  Plaintiff responds that the supervisory liability claims survive as alternative theory of liability.  Pl. Mem. at 9-10.

"[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "A supervisor's 'mere knowledge . . .' is not sufficient because that knowledge does not 'amount[ ] to the supervisor's violating the Constitution.'" *Sellers v. Andrea*, No. 3:22-cv-585, 2022 WL 17830715, at *4 (D. Conn. Dec. 21, 2022) (quoting *Tangretti*, 983 F. 3d at 616-17) (additional quotation omitted). "The focus is on what the *supervisor* did or caused to be done, 'the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable, which can be no less than the *mens rea* required of anyone else.'" *Tangreti*, 983 F.3d at 618 (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir. 2010) (Gorsuch, J.)) (emphasis in original).

Following *Tangretti*, standalone claims for supervisory liability are "no longer cognizable." *Kweller v. Cnty. of Broome*, No. 3:25-cv-343 (AJB), 2025 WL 3280821, at *16 (N.D.N.Y. Nov. 25, 2025); *see also Kistner v. City of Buffalo*, No. 21-cv-526, 2023 WL 144915, at *15 (W.D.N.Y. Jan. 10, 2023) ("since *Tangreti*, section 1983 claimants can no longer rely on the theories of supervisory liability or failure to discipline to establish a supervisor's personal involvement in a constitutional violation.").

Because the Second Circuit no longer recognizes supervisory liability as an independent claim under § 1983, Plaintiff's claims for supervisory liability are dismissed, but evidence that Defendants acted in a supervisory capacity may be used to establish direct liability for other claims.

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss under Rule 12(b)(6), Dkt. No. 26, is **GRANTED**; and it is further

**ORDERED** that Plaintiff's malicious prosecution and fair trial claims are **DISMISSED without prejudice**, and it is further

**ORDERED** that Plaintiff's supervisory liability claim is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

Dated: March 19, 2026

_____
Elizabeth C. Coombe
U.S. District Judge